Minute Order Form (rev. 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 99 C 4820 | Date | June 27, 2000 |
| Case Title | RENEE K. WATANABE v. LOYOLA UNIVERSITY OF CHICAGO, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

MOTION OF DEFENDANT LOYOLA UNIVERSITY OF CHICAGO TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ ☐ Ruling / Hearing on _____ set for _____ at _____
(5) ✓ Status hearing ☐ held ☐ continued to ☑ set for ☐ re-set for 8/22/00 at 9:00
(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____
(8) ☐ ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)
(10) ✓ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendants' motions to dismiss plaintiff's complaint as untimely are denied. Defendant Loyola's motion to dismiss count XV is granted, and to dismiss counts I,IV,V,IX,XII,XIII is denied. Defendant Dunhill's motion to dismiss count VI is granted in part and denied in part. Olsten's motion to dismiss Count VII is granted in part and denied in part. Counts III and VIII are dismissed. Plaintiff's amended complaint is due by 8/18/00.
(11) Patricia Slovak's motion to withdraw as counsel for plaintiff is granted.

| | | number of notices | |
|---|---|---|---|
| ✓ | No notices required, advised in open court. | | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | JUL 0 3 2000 date docketed | Document # |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | docketing dpty. initials |
| | Mail AO 450 form. | | 60 |
| | Copy to judge/magistrate Judge. | | date mailed notice |
| [initials] courtroom deputy's Initials | Date/time received in central Clerk's Office | mailing dpty. initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENEE WATANABE, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 99 C 4820 |
| v. | )<br>) Judge Robert W. Gettleman |
| LOYOLA UNIVERSITY OF CHICAGO,<br>DUNHILL TEMPORARY SYSTEMS, INC.,<br>d/b/a Dunhill Staffing Systems and OLSTEN<br>STAFFING SERVICES VI, INC., d/b/a<br>CO-COUNSEL, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Renee Watanabe has filed a 15-count amended complaint against defendants Loyola University of Chicago ("Loyola"), Dunhill Temporary Systems, Inc. ("Dunhill"), and Olsten Staffing Services VI, Inc., d/b/a Co-Counsel ("Co-Counsel"), alleging: race and national origin discrimination in violation of Title VII (Counts I, II, III); retaliation in violation of Title VII (Count IV); race and national origin discrimination in violation of 42 U.S.C. § 1981 (Counts V, VI, VII); conspiracy to discriminate in violation of 42 U.S.C. § 1985(3) (Count XII); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Counts IX, X, XI); retaliation in violation of the ADEA (Count XII); disability discrimination in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq. (Counts XIII, XIV); and intentional infliction of emotional distress ("IIED") (Count XV). Defendants have filed motions to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## FACTS

For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). Plaintiff, a woman of Asian ancestry, alleges that after she graduated from Loyola with a Bachelor's degree in Philosophy and a pre-law certificate for paralegal studies, she suffered discrimination during her attempts to find a job. Plaintiff was scheduled to receive her degree in January 1998. Plaintiff alleges that she was falsely accused of threatening a Loyola employee, that she was forced to attend counseling as a result of this incident, and that consequently, she did not receive her degree until September 1998.

Between January and June 1998, plaintiff met with Susan Reis ("Reis"), Director of Loyola's Career Center, and sought Reis's help in securing a job. Although during the first meeting, Reis indicated that she was willing to help plaintiff in her job search, plaintiff alleges that as time went on, Reis became increasingly insulting towards her. According to plaintiff, Reis implied that plaintiff was too old for the placement office to be of assistance to her. During one meeting, plaintiff raised the issue of discrimination with Reis and Reis asked plaintiff if she planned to sue Loyola. After that discussion, Reis made no further efforts to place plaintiff in a job. Plaintiff alleges that on information and belief, Reis helped non Asian-American students under forty find jobs. Plaintiff alleges that the foregoing actions constitute discrimination on the basis of race, national origin, and age, and that she was retaliated against for complaining about race and age discrimination. Plaintiff further alleges that Loyola treated her as if she were incapable of normal mental processes and as if she had psychological problems. She alleges that

2

Loyola refused to help her find employment because it perceived her as disabled.

Plaintiff has also brought claims against Dunhill and Co-Counsel, temporary agencies with whom she sought employment during the fall of 1998. Plaintiff spoke with two Caucasian employees at Dunhill who told her that the organization had positions open for which she would be qualified. The Dunhill employees who interviewed plaintiff were under forty and treated plaintiff with disrespect because of her age. Unnamed Dunhill employees proceeded to offer plaintiff temporary employment in extremely low-paying jobs, far below the level for which she was qualified. Plaintiff alleges that on information and belief, Dunhill offered higher paying jobs to non Asian-American applicants under the age of forty. Plaintiff alleges that one of the jobs Dunhill offered her was a position with the fiancé of a Loyola professor who had denigrated plaintiff in the past. Plaintiff also alleges that Dunhill treated her as if she were incapable of normal mental processes and as if she had psychological problems. She alleges that Dunhill refused to offer her positions commensurate with her education and experience because it perceived her as disabled.

At Co-Counsel, plaintiff met with a Caucasian employee who told plaintiff that there were job openings for positions that fit plaintiff's qualifications. Co-Counsel never contacted plaintiff about any job openings, however, and when plaintiff inquired about the progress of her file, Co-Counsel informed her that it no longer had any open positions. In addition, the Co-Counsel employees who interviewed plaintiff were under forty and treated plaintiff with disrespect because of her age. Plaintiff alleges that on information and belief, Co-Counsel placed under forty, non Asian-American applicants under the age of forty in positions commensurate with their education and experience. Plaintiff also alleges that Co-Counsel treated her as if she

3

were incapable of normal mental processes and as if she had psychological problems. She alleges that Co-Counsel refused to offer her positions commensurate with her education and experience because it perceived her as disabled.

On December 10, 1998, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On a date uncertain, plaintiff received a right-to-sue letter from the EEOC dated April 22, 1999. Plaintiff filed her complaint in the instant case on July 23, 1999. Plaintiff has yet to secure a job.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. See Travel All Over the World, 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

## DISCUSSION

All three defendants move to dismiss plaintiff's complaint as untimely. In the alternative, Loyola has filed a motion to dismiss Counts I, IV, V, VIII, IX, XII, XIII, and XV. Dunhill has filed a motion to dismiss Counts VI and VIII. Co-Counsel has filed a motion to dismiss joining the other defendants' motions.[1] For the following reasons, defendants motions are granted in

---

[1] Accordingly, the court will address Loyola's and Dunhill's motions only. Where applicable, rulings on these motions will apply to the counts against Co-Counsel as well.

4

part and denied in part.

**I. Timeliness**

Defendants argue that plaintiff did not file her complaint within 90 days of receiving a "right-to-sue" letter from the EEOC. Defendants also argue that even if plaintiff's original complaint was timely filed, it should be dismissed because she fails to allege that the discrimination of which she complains occurred no more than 300 days before the date she filed a charge with the EEOC.

Under 42 U.S.C. S 2000e-5(f)(1), a plaintiff must file suit within 90 days of receiving a right-to-sue letter from the EEOC. The parties dispute both the date plaintiff received the right-to-sue letter and the date plaintiff filed her initial pro se complaint. If plaintiff filed her original complaint on July 23, 1999, the date she alleges it was filed, she must allege that she received the right-to-sue letter on or after April 24, 1999, in order to come within the 90 day period.

In her initial pro se complaint, plaintiff alleged that she received the right-to-sue letter on April 23, 1999. In her amended complaint, filed by appointed counsel, plaintiff alleges that she does not remember the exact date she received the right-to-sue letter. Defendants argue that plaintiff is bound by the factual allegations contained in her initial complaint and cannot now disavow those facts. Plaintiff, however, has attached to her amended complaint a postal notice that states that delivery of the letter was attempted on April 23, 1999, and that the letter would be available for pickup after April 24, 1999. This document affirmatively demonstrates that plaintiff could not have received the right-to-sue letter before April 24, 1999. Nevertheless, Loyola is correct to argue that plaintiff should allege the actual date she received the letter in the body of her complaint. The court therefore directs plaintiff to amend her complaint to read that

5

she received the right-to-sue letter "on or after April 24, 1999."

Loyola also contends that plaintiff's complaint was not timely filed because although it was stamped "received" by the court on July 23, 1999, it was stamped "filed" on July 28, 1999. This argument disregards Local Rule 3.3(d). When a plaintiff accompanies the complaint by an in forma pauperis petition and the judge grants the petition, the complaint shall be deemed to be filed "as of the date of the judge's order <u>except that where the complaint must be filed within a time limit and the order granting leave to file is entered after the expiration of that time limit, the complaint shall be deemed to have been filed . . . as of the time the complaint was received by the clerk</u>." L.R. 3.3(d) (emphasis added). The Seventh Circuit has held that under this rule, "the receipt of the complaint by the clerk suffices, at least when the judge ultimately permits the plaintiff to proceed IFP." <u>Williams-Guice v. Bd. of Educ. of City of Chicago</u>, 45 F.3d 161, 162 (7th Cir. 1995) (discussing <u>Gilardi v. Schroeder</u>, 833 F.2d 1226, 1233 (7th Cir. 1987)). Consequently, the court deems plaintiff's complaint to have been filed on July 23, 1999, the date it was stamped "received."

Because plaintiff received the right-to-sue letter on or after April 24, 1999, and filed her initial complaint on July 23, 1999, her complaint was filed within the 90-day window. The court therefore need not address plaintiff's equitable tolling argument. Defendants' motions to dismiss plaintiff's complaint for failing to file within 90 days of receiving a right-to-sue letter are denied.

Defendants next argue that plaintiff's complaint should be dismissed because she does not allege that she filed her EEOC charge within 300 days of the alleged discrimination. "In Illinois, a complainant must file a complaint [with the EEOC] within three hundred days of the alleged [discrimination]. . . . Failure to do so renders the complaint untimely." <u>Koelsch v.

6

Beltone Electronics Corp., 46 F.3d 705, 707 (7th Cir. 1995) (citing 42 U.S.C. § 2000e-5(e)). Plaintiff filed her EEOC charge on December 10, 1998. Plaintiff alleges in her complaint that Dunhill and Co-Counsel discriminated against her in the fall of 1998. Plaintiff thus alleges that the discrimination occurred less than 300 days before she filed her complaint. Plaintiff alleges that Loyola discriminated against her between January and June 1998. According to this court's calculation, only discrimination that occurred on or after February 13, 1998, is actionable. Plaintiff therefore should amend her claims against Loyola to include only alleged discrimination that occurred within this 300 day window.

**II. Loyola's Motion to Dismiss**

**A. Title VII, ADEA, and ADA Claims (Counts I, IV, IX, XII, XIII)**

Loyola moves to dismiss plaintiff's Title VII, ADEA, and ADA claims, as well as plaintiff's retaliation claims under those acts, arguing that Loyola was not plaintiff's employer. Plaintiff responds that because plaintiff enlisted the school's career placement office in helping her procure a job, Loyola can be held liable under the statutes as an employment agency.[2] Title VII, the ADEA, and the ADA define the term "employment agency," as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer[,] includ[ing] an agent of such a person." 42 U.S.C. § 2000e-2(c); 28 U.S.C. § 630(c); 42 U.S.C. § 12111(7).

In support of her argument, plaintiff cites Kaplowitz v. University of Chicago, 387 F.

---

[2]Although the amended complaint alleges that all defendants, including Loyola, were plaintiff's "employers," it also alleges that plaintiff sought the assistance of the Director of Loyola's Career Center for "help in finding placement in an appropriate job based on her skills."

7

Supp. 42 (N.D. Ill. 1974), in which Judge Marovitz held that the placement office of the University of Chicago Law School operated as an employment agency under Title VII. Id. at 46. Judge Marovitz ultimately granted summary judgment for the defendants, however, concluding that "plaintiffs' interpretation of an employment agency's statutory duty is in conflict with the overriding purpose of the statute as a whole." Id.

Neither the Seventh Circuit nor any other Circuit has decided the exact issue before this court. When confronted with the question of whether a medical school functions as an employment agency, the Seventh Circuit explicitly declined to decide the question. The court took note of Kaplowitz's holding but observed: "The Court in Kaplowitz . . . did not need to make an express finding that the law school acted as an employment agency in order to decide the case. Thus the language relied on by plaintiff is dicta." Cannon v. University of Chicago, 559 F.2d 1063, 1076 n.24 (7th Cir. 1976), rev'd on other grounds, 441 U.S. 677 (1979). The Cannon court nevertheless proceeded to "assum[e] for the purposes of argument a liberal construction of the term employment agency holding that the defendants do operate employment agencies." Id. at 1076.

Yet the plaintiff in Cannon was in a different position than plaintiff in the instant case and the plaintiffs in Kaplowitz. As the Cannon court explained: "Plaintiff is seeking admission to the defendant schools as a medical student, not as an individual seeking employment through the schools. Plaintiff admits that the defendants have not failed or refused to refer her for employment on the basis of her age." Id. The court concluded that plaintiff's claim (that denying her admission to medical school was tantamount to denying her post-graduate employment) was "too remote." Id. "In order for an individual to state a claim under the act,

8

that individual must be qualified to accept employment and only then have been discriminated against on the basis of age." Id.

The foregoing discussion in Cannon suggests that the Seventh Circuit would not reject out of hand the notion that a school placement office might operate as an employment agency. After all, the court acknowledged Kaplowitz's conclusion and analyzed Cannon's evidence under that assumption. Unlike the plaintiff in Cannon, plaintiff in the instant case does allege that Loyola "failed or refused to refer her for employment on the basis of her age [, race, and disability]." Id. Kaplowitz was decided at the summary judgment stage, however, and Judge Marovitz analyzed a variety of facts established in the record in reaching the conclusion that the law school was operating as an employment agency in relation to the plaintiffs. The court therefore concludes that it cannot decide at the pleading stage of this litigation whether Loyola was operating as an employment agency when plaintiff availed herself of the placement office's services. Loyola's motion to dismiss Counts I, IV, IX, XII, and XIII is denied, but plaintiff is directed to amend her complaint to allege that Loyola was operating as an employment agency if she wishes to pursue these claims.

**B. Section 1981 Claim (Count V)**

Loyola moves to dismiss plaintiff's § 1981 claim, arguing that plaintiff does not allege that she and Loyola had a contract. Section 1981 guarantees "[a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws . . . ." 42 U.S.C. § 1981(a) (emphasis added). "In order to bring a section 1981 claim there must at least be a contract." Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1034 (7th Cir. 1998). Once a contract has been

9

established, a party must next allege "proof or admission of intentional discrimination." Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 583 (1984).

Loyola argues that plaintiff cannot maintain a cause of action under § 1981 because plaintiff does not and cannot allege a contractual relationship with the school. Plaintiff responds that she had a contractual relationship with Loyola because, as a student, she paid Loyola to receive the education and services it offered to all students. The Supreme Court held in Runyon v. McCrary, 427 U.S. 160 (1976): "[S]ection 1981 prohibits private, commercially operated, nonsectarian schools from denying admission to prospective students because" of their race. Id. at 168. Defendants do not and cannot dispute that this holding remains good law.[3] In a different context, the Seventh Circuit reaffirmed the principle that "the basic legal relation between a student and a private university is contractual in nature." Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992) (internal citations and quotation marks omitted). Because plaintiff has pled facts justifying that she and Loyola had a contract, she states a claim under § 1981.

**C. IIED Claim (Count XV)**

In Count XV, plaintiff accuses Loyola of intentional infliction of emotional distress ("IIED"). To recover on this claim, plaintiff must have evidence to establish that defendant's "extreme and outrageous" conduct caused her severe emotional distress. Adams v. Sussman & Hertzberg, Ltd., 684 N.E.2d 935 (Ill. App. Ct. 1997). Extreme and outrageous conduct sufficient

---

[3] In fact, this court discussed Runyon as recently as two years ago. See Tabor v. City of Chicago, 10 F. Supp. 2d 988, 992 (N.D. Ill. 1998). Other courts in this district regularly sustain § 1981 lawsuits against private schools without even discussing the basis for finding a contractual relationship between student and school. See, e.g., Lerner v. Ravenswood Hosp. Med. Ctr., 1999 WL 1267710 (N.D. Ill. Nov. 10, 1999) (nursing student suing nursing school); Lewis v. Russe, 713 F. Supp. 1227 (N.D. Ill. 1989) (medical student suing medical college).

to create liability for IIED is defined as conduct that exceeds all bounds of human decency and that is regarded as intolerable in a civilized community. Id. at 941. The tort does not extend to threats, insults, indignities, annoyances, petty oppressions or other trivialities. Id. Rather "the emotional distress must be so severe that no reasonable [person] could be expected to endure it." Lundy v. City of Calumet City, 567 N.E.2d 1101, 1103 (Ill. App. Ct. 1991) (quoting Restatement (Second) of Torts § 46, comment j (1965)).

Allegations that a plaintiff was "a victim of sexual harassment . . . [or] retaliatory discharge [do] not necessarily mean that she has a cause of action for intentional infliction of emotional distress." Miller v. Equitable Life Assur. Soc., 537 N.E.2d 887, 889 (Ill. App. Ct. 1989). Similarly, mere allegations of discriminatory conduct do not necessarily rise to the level of IIED. See Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). In Harriston, the Seventh Circuit concluded that an employee did not state an IIED claim, even though she alleged, inter alia, that she had been forced out of her management position, excluded from office activities, threatened with discipline, and falsely accused of having poor sales. Id.

Plaintiff alleges that Loyola subjected her to the following discriminatory conduct: she was falsely accused of threatening a Loyola employee and was forced to seek counseling she did not need; because of this situation, she was unable to complete a class she needed to graduate and was forced to graduate in September rather than January; and when she applied to employment agencies after she graduated, Loyola provided negative and derogatory information to these agencies. Plaintiff also alleges that, because Loyola sabotaged her efforts to complete her final class, graduate, and find a job, she was unable to support her son and pay his tuition. The court concludes that the conduct plaintiff alleges was not so severe that no reasonable person could be

11

expected to endure it. As the Seventh Circuit held in Harriston, false accusations do not necessarily create an IIED cause of action. As for plaintiff's allegation that Loyola hurt her chances of securing a job, plaintiff does not allege that the information Loyola provided to the employment agencies was false, but merely alleges that it was negative. Giving a student a negative evaluation, especially if it is true, does not form the basis for an IIED claim.

Moreover, any state tort claim that rests on the same facts as a plaintiff's discrimination claims is preempted by the Illinois Human Rights Act ("IHRA"). See Maksimovic v. Tsogalis, 687 N.E.2d 21, 24 (Ill. 1997). The IHRA defines unlawful discrimination as "discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, [or] handicap . . . as those terms are defined in this Section." 775 ILCS 5/1-103(Q). In addition, the IHRA contains an exclusive remedy provision that states: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation." 775 ILCS 5/8-111(C). Clearly, the duty not to discriminate on the basis of race, age, or disability is a duty created by the IHRA. Yet it is Loyola's discrimination in spite of this duty that plaintiff argues renders Loyola's conduct outrageous. See, e.g., Huff v. Sheehan, 1999 WL 182149, at *5 (N.D. Ill. Mar. 24, 1999). Because plaintiff would be unable to establish her IIED claim absent her allegations of discrimination, this claim is preempted by the IHRA. To the degree that plaintiff has alleged an IIED claim, the court lacks jurisdiction over that claim. For the foregoing reasons, the court grants Loyola's motion to dismiss Count XV.

### III. Title VII Claim Against Co-Counsel (Count III)

Title VII makes it unlawful "for an employer to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §

12

2000e2(a)(1). In her Title VII claim against Co-Counsel (Count III), plaintiff alleges that, at some unspecified time, Co-Counsel placed non Asian-Americans in positions commensurate with their qualifications. She alleges that Co-Counsel told her that it did not have any open positions. Plaintiff does not allege, however, that Co-Counsel placed others outside the protected class in jobs after this date, and does not otherwise allege that at the time Co-Counsel had openings, it did not place her <u>because</u> she was Asian-American. If Co-Counsel declined to place plaintiff in a job because it had no openings, as plaintiff suggests in her complaint, rather than because it was hiring on a discriminatory basis, plaintiff cannot state a claim for intentional discrimination. The court, on its own motion, dismisses Count III for failure to state a claim upon which relief can be granted.

**IV. Section 1981 Claim Against Dunhill (Count VI)**

Dunhill moves to dismiss plaintiff's § 1981 claim, arguing: (1) plaintiff does not allege an existing contract; (2) plaintiff does not allege intentional discrimination; and (3) national origin discrimination is not cognizable under § 1981.

A plaintiff need not allege an existing contract to state a § 1981 claim. Subsection (b) of § 1981, added by the Civil Rights Act of 1991, explicitly defines the phrase "make and enforce contracts" as including, "the making performance, modification, and termination of contracts." 42 U.S.C.§ 1981(b). "'In the context of employment discrimination, for example, this would include, but is not limited to, claims of harassment, discharge, demotion, promotion, transfer, retaliation, and <u>hiring</u>.'" <u>Gonzalez v. Ingersoll Milling Machine Co.</u>, 133 F.3d 1025, 1034 (7th Cir. 1998) (quoting H.R. Rep. 102-40(II), at 37, reprinted in U.S.C.C.A.N. 549, 730-31) (emphasis added). Even before Congress expanded the protections of § 1981 by passing the

13

Civil Rights Act of 1991, it was clear that at the very least the statute covered the formation of contracts: "The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms." Patterson v. McLean Credit Union, 491 U.S. 164, 177 (1989) (overruled by the Civil Rights Act of 1991). Plaintiff alleges that Dunhill and Co-Counsel refused to enter into employment contracts with her because of her race, or, alternatively, that Dunhill offered her a contract on discriminatory terms. Plaintiff therefore states a § 1981 claim against these defendants.

Dunhill's contention that plaintiff has not alleged intentional discrimination is groundless. Plaintiff alleges that Dunhill treated her differently than similarly situated applicants not in the protected class. Disparate treatment is a form of intentional discrimination prohibited under § 1981. See, e.g., Palmer v. Bd. of Educ. of Community Unit School District 201-U, 46 F.3d 682, 687 (7th Cir. 1995) ("The law is designed, in contemporary language, to forbid disparate treatment.").

Dunhill argues that even if plaintiff can maintain a § 1981 claim for race discrimination, this statute does not proscribe national origin discrimination. The Supreme Court has held that although § 1981 does not protect a plaintiff who alleges that he was "subjected to intentional discrimination based . . . solely on the place or nation of his origin," "we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987). The Seventh Circuit has observed that under this holding, "the line between national origin and race or ethnicity for section 1981 claims cannot be bright." Von Zuckerstein v. Argonne Nat'l

Laboratory, 984 F.2d 1467, 1472 (7th Cir. 1993). The Von Zuckerstein court explained, "[p]laintiffs' case would have been stronger had they alleged and argued discrimination based on race or ethnicity rather than national origin; however, failure to plead discrimination based on race or ethnicity for section 1981 purposes is not necessarily fatal to their cause." Id. Of course, to the degree that "the place or nation of origin . . . determines ancestry or ethnic characteristics," discrimination on the basis of these characteristics is actionable under § 1981. Id. The court therefore dismisses plaintiff's national origin discrimination claim and directs her to replead this claim in accordance with Al-Khazraji and its progeny.

**V. Conspiracy Claim Against All Defendants (Count VIII)**

Loyola, Dunhill, and Co-Counsel all move to dismiss Count VIII, plaintiff's § 1985(3) claim, in which she alleges that the three defendants entered into a conspiracy to deprive her of her § 1981 rights in violation of § 1985(3). Loyola argues that plaintiff cannot allege that Dunhill offered her a job and simultaneously contend that Loyola conspired to deprive her of her rights under § 1981 by not aiding her in finding employment. Plaintiff does not allege, however, that Loyola helped her secure an interview with Dunhill. In fact, plaintiff alleges that Reis took no action to help plaintiff find a job. The court therefore declines to dismiss plaintiff's conspiracy claim against Loyola under Loyola's reasoning.

Plaintiff's conspiracy claim is nevertheless fatally deficient for other reasons. To state a claim under § 1985(3) plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving her, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; and (4) an injury to her person or his property or a deprivation of any right or privilege of a citizen of the United States.

Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).

In its motion to dismiss the conspiracy claim, Dunhill argues that plaintiff fails to allege a "meeting of the minds," Trautvetter v. Quick, 916 F.2d 1140, 1153 (7th Cir. 1990), and fails to allege that defendants committed some act in furtherance of the conspiracy that deprived plaintiff of her rights. The court agrees with Dunhill that plaintiff fails to allege that Dunhill, Co-Counsel, and Loyola shared the same conspiratorial objective and fails to set forth that the three defendants entered into an agreement to deprive plaintiff of her rights. See, e.g., Hilton by Hilton v. Lincoln-Way High School, 1998 WL 26174, at *4 (N.D. Ill. Jan. 14, 1998) ("Although plaintiff is certainly not required to prove an express agreement between the defendants, she must allege facts indicating that the defendants shared the same conspiratorial objective or motive."). From the face of plaintiff's complaint, the court cannot discern even the bare outlines of the scope of the agreement plaintiff alleges the three defendants entered into. Accordingly, plaintiff's conspiracy claim (Count VIII) is dismissed.

## CONCLUSION

In conclusion, defendants' motions to dismiss plaintiff's complaint as untimely are denied. Plaintiff is nevertheless directed to amend her complaint to read that she received the right-to-sue letter "on or after April 24, 1999," and to amend her claims against Loyola to include only alleged discrimination that occurred within 300 days of the date she filed her EEOC charge. Loyola's motion to dismiss Count XV is granted and its motion to dismiss Counts I, IV, V, IX, XII, XIII is denied. If plaintiff wishes to pursue her claims against Loyola, she is directed to amend her complaint to allege that Loyola was operating as an employment agency. Dunhill's motion to dismiss Count VI is granted in part and denied in part. Based on the foregoing, Co-

Counsel's motion to dismiss Count VII, the § 1981 claim against it, is likewise granted in part and denied in part. Plaintiff is directed to remove allegations of national origin discrimination from Counts VI and VII and amend her complaint in accordance with the Supreme Court's opinion in <u>Al-Khazraji</u>, 481 U.S. at 613, and its progeny, if she wishes to pursue these claims. Co-Counsel's motion to dismiss Count XI is denied. On its own motion the court dismisses Count III, plaintiff's Title VII claim against Co-Counsel. Count VIII is dismissed against all defendants.

Finally, plaintiff's court-appointed counsel, Patricia Costello Slovak, has filed a motion to withdraw from the instant matter. That motion is granted. The court will appoint new counsel for plaintiff. Plaintiff's amended complaint is due by August 18, 2000. This matter is set for a report on status August 22, 2000.

**ENTER:** **June 27, 2000**

---
Robert W. Gettleman
United States District Judge